**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 25-101 |
| | ) | |
| ZACHARY JAMES STARR | ) | |

**MEMORANDUM AND ORDER OF COURT**

Presently before the Court is the Motion to Quash the Government's Witness Subpoena

filed by non-party Google LLC ("Google"), which is opposed by the Government.  (Docket Nos.

44, 45, 55, 60).  The Government's subpoena ("Subpoena") originally requested that a records

custodian from Google either testify in person at the suppression hearing scheduled in this matter

or provide documents and information in lieu of personal appearance, but the Government has

since revised its request to that of a written declaration addressing certain more specific topics.

(Docket Nos. 45-2; 55 at 2).  In its Motion to Quash, Google asks the Court to quash the Subpoena

as unreasonable and oppressive under Rule 17(c)(2) of the Federal Rules of Criminal Procedure.

(Docket No. 45 at 1).  For the reasons that follow, Google's Motion to Quash will be granted in

part and denied in part.

### I.    BACKGROUND[1]

On April 8, 2025, Defendant Zachary James Starr was charged in a two-count Indictment

with possession of material depicting the sexual exploitation of a minor, and destruction, alteration,

or falsification of records in federal investigations.  (Docket No. 3).  As alleged in the Indictment,

---

[1]    A hearing on Defendant's suppression motion is scheduled to be held next month.  Therefore, for purposes of ruling on Google's Motion to Quash, the Court relies on the various representations made by the parties and Google in their briefs.  As such, the discussion herein does not constitute factual findings by the Court.  Additionally, although the parties and Google describe certain factual matters addressed herein differently, the Court notes that those differences are not material to the Court's resolution of the Motion to Quash.

Defendant knowingly possessed such materials, consisting of videos and images, in computer graphics files. (*Id.*). These files were obtained in connection with a search of Defendant's Google Drive, the virtual file storage system that was part of his Google account. (Docket Nos. 34 at 1; 55 at 1).

Google, which is a provider of internet-based services, takes steps to monitor its platform for illegal content, including apparent child sexual abuse material ("CSAM"). (Docket Nos. 34 at 1; 38 at 2; 45 at 3). When Google detects files containing apparent CSAM, it submits certain information (in the form of "CyberTips") and forwards files at issue to the National Center for Missing and Exploited Children ("NCMEC") CyberTipline. (*Id.*). NCMEC then generates a CyberTipline report and forwards it and the files at issue to law enforcement. (Docket Nos. 34 at 1-2; 38 at 2; 38-3; 45 at 3). Section A of the CyberTipline report contains information submitted by the reporting person or reporting electronic service provider ("ESP"), including the question, "Did reporting ESP view entire contents of uploaded file?" to which an answer of "Yes" or "No" is provided. (Docket No. 38-3).

Here, after detecting files containing apparent CSAM, Google submitted seven CyberTips to NCMEC related to Defendant's Google account. (Docket Nos. 38 at 2; 45 at 3; 34 at 1). According to the CyberTipline reports, Defendant's account had uploaded 4,145 images and videos that Google flagged as CSAM. (Docket No. 38 at 2). The CyberTipline reports also indicate that 461 of the 4,145 items were viewed by a "Google reviewer." (Docket Nos. 38 at 2; 56 (filed under seal)). NCMEC forwarded the CyberTipline reports and the files at issue to law enforcement, where Federal Bureau Investigation ("FBI") Special Agent Thomas Stoner ("SA Stoner") and his partner FBI Task Force Officer Steven Dish ("TFO Dish") reviewed four of the images and videos. (Docket Nos. 38 at 2; 38-4 at 4-5 (filed under seal)). Based on such review,

SA Stoner submitted an Application and Affidavit for Search Warrant (Docket No. 38-4 (filed under seal)), and a residential search warrant for Defendant's home was obtained. (Docket No. 38 at 2). Law enforcement executed the warrant for Defendant's home, seized several items, and additional warrants were also obtained and executed. (*Id.* at 2-4). A federal Grand Jury subsequently returned the above-referenced Indictment against Defendant in this case. (Docket No. 3).

On February 17, 2026, Defendant filed a Motion to Suppress evidence, which is opposed by the Government. (Docket Nos. 33, 34, 38). In his Motion to Suppress, Defendant argues that all proceeds from the searches of his Google Drive account, including the proceeds of the search warrants based upon the original warrantless searches of his account, must be suppressed because the searches violated his rights under the Fourth Amendment to the United States Constitution. (Docket No. 34 at 20). Defendant first contends that the Government's anticipated argument, that the searches were lawful under the "private search doctrine," should be rejected.[2] (*Id.* at 2, 4). Defendant also asserts that he had a reasonable expectation of privacy in the files stored in his Google Drive account, and that when Google searched his account and found suspected CSAM, Google did so as a state actor because it has been commandeered by federal law to conduct surveillance of private citizens. (*Id.* at 3, 7). Defendant further contends that NCMEC is a government actor for purposes of Fourth Amendment analysis. (*Id.* at 6-7). Defendant concludes that the FBI agents' initial warrantless viewing of the four Google files in question was unlawful,

---

[2]    The private search doctrine provides, in essence, that a past private search excuses the Government from obtaining a warrant to repeat the search if the Government's search does not exceed the scope of the private search. *See, e.g., United States v. Lowers*, 170 F.4th 134, 151-52 (4th Cir. 2026) (discussing the Supreme Court's handling of the private search doctrine); *United States v. Brillhart*, Case No. 2:22-cr-53, 2023 WL 3304278, at *4-5 (M.D. Fla. May 7, 2023) (same).

so the subsequent warranted searches, which were based on the initial warrantless search, were also unlawful.  (*Id.* at 7).

In response, the Government asserts that Defendant lacks standing to object to the search of his Google Drive because he did not have a reasonable expectation of privacy in those files under Google's Terms of Service.  (Docket No. 38 at 5).  The Government also argues that the search of Defendant's Google Drive is protected by the private search doctrine since a human reviewer from Google (a private entity) viewed certain files before the entirety of the flagged CSAM files were forwarded to NCMEC and then to the FBI, at which point SA Stoner and TFO Dish viewed the same files that a human Google reviewer had already viewed.  (*Id.* at 7-10).  The Government further contends that Defendant has no property interest in the CSAM located within his Google account, and that, even if the Court were to determine that a Fourth Amendment violation occurred, suppression is unwarranted under the good faith exception.  (*Id.* at 10, 12).

The Court scheduled a hearing on Defendant's suppression motion for June 9, 2026, which was continued at Defendant's request to July 1, 2026.  (Docket Nos. 39, 40, 41).  On June 17, 2026, Google filed its Motion to Quash the Subpoena.  (Docket Nos. 44, 45).  The Court then held a Telephone Conference of Counsel in which counsel for the Government, Google, and Defendant all participated.  (Docket Nos. 49, 52, Telephone Conference of Counsel held on June 25, 2026 ("Conf. of Counsel")[3]).  The Government filed its response to the Motion to Quash on June 26, 2026, at which point the Court also granted the Government's Motion to Continue the suppression hearing.  (Docket Nos. 55, 56 (filed under seal), 58, 59).  Google filed its reply to the Government's

---

[3]    An official transcript of the Telephone Conference of Counsel has not been produced as of this date. Therefore, the Court discusses the conference by reference to an unofficial draft of the transcript.

response to the Motion to Quash on June 29, 2026.  (Docket No. 60).  The Motion to Quash has been fully briefed by the parties and is now ripe for disposition.

## II.    DISCUSSION

A Rule 17(c) subpoena[4] "is designed as an aid for obtaining relevant evidentiary material that the moving party may use at trial."  *United States v. Cuthbertson*, 630 F.2d 139, 144 (3d Cir. 1980).  To that end, "Rule 17(c) is a vehicle to obtain known, ascertainable evidence from a third party that is relevant to the charged conduct, meaning that [the requesting party] can only obtain Court approval of a Rule 17(c) subpoena by pointing to specific, admissible evidence that is relevant to the [charges] which he faces in this case."  *United States v. Mills*, Crim. No. 17-122, 2018 WL 1382647, at *4 (W.D. Pa. Mar. 19, 2018); *see also United States v. Onyenso*, Crim. No. 12-602, 2013 WL 5322651, at *1 (D.N.J. Sept. 20, 2013) ("[T]he requesting party must 'show the evidentiary nature of the requested materials with appropriate specificity' and 'do more than speculate about the relevancy of the materials being sought.'" (quoting *United States v. Shinderman*, 232 F.R.D. 147, 150 (D. Maine 2005))).

However, "[c]ourts must be careful that [a] rule 17(c) [subpoena] is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in Fed. R. Crim. P. 16."  *Cuthbertson*, 630 F.2d at 146.  To obtain production prior to trial from a third-party witness under Rule 17(c), the party seeking production bears the initial burden.  *See United States v. Smukler*, Crim. Action No. 17-563, 2018 WL 3632148, at *2 (E.D. Pa. July 31, 2018).  To meet its burden, the party must show the following:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due

---

4       Rule 17(c)(1) provides that "[a] subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates.  The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence.  When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them."  Fed. R. Crim. P. 17(c)(1).

diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

*United States v. Nixon*, 418 U.S. 683, 699-700 (1974).  In *Nixon*, the Supreme Court summarized the moving party's burden as clearing the three hurdles of:  "(1) relevancy; (2) admissibility; [and] (3) specificity."  *Id.* at 700.  It is within the district court's discretion to determine whether these three hurdles have been cleared.  *See id.* at 702.

Google, in its Motion to Quash, argues that any testimony from its records custodian (via live witness testimony or a written declaration) is cumulative of facts provided in its publicly available Terms of Service ("TOS") and Privacy Policy, and in documents that are already in the record, including a declaration from NCMEC that contains information regarding the CyberTipline reports.[5]  (Docket No. 45 at 1).  Google also contends that the requested testimony is either immaterial or irrelevant to deciding the issues raised in Defendant's Motion to Suppress.  (*Id.*).

Although the Government's Subpoena initially requested from Google live witness testimony at the suppression hearing, or that Google submit certain documents and information in lieu of personal appearance, the Government has now limited its request to the submission of a written declaration[6] from Google addressing the following topics:  (1) Google's Terms of Service and Privacy Policy; (2) Google's business interest in ensuring that its platform is free of CSAM; (3) Google's process for human review of CSAM files; and, related to the human review process,

---

[5]    At the time its Motion to Quash was filed, Google mistakenly believed that the CyberTipline reports were already in the Court's record.  (Conf. of Counsel).  However, the Government indicated during the Telephone Conference of Counsel that it intends to introduce the CyberTipline reports into evidence at the upcoming suppression hearing.  (*Id.*).  In the meantime, at the Court's request, the Government has provided, under seal, one of the CyberTipline reports involved in this case as an example.  (Docket No. 56 (filed under seal)).

[6]    *See* Docket No. 55 at 2.

6

(4) Google's human review of the four files relied upon by SA Stoner in securing the search warrants in this case. (Docket No. 55 at 2; Conf. of Counsel). The Government contends that these topics are relevant and specific to Defendant's Motion to Suppress, and that the requested declaration is in conformity with other written declarations supplied by Google in similar cases.[7] (Docket No. 55 at 2). Thus, the Government concludes, issuing a subpoena for relevant and specific information that Google can easily access and routinely provides is neither unreasonable nor oppressive.[8] (*Id.*).

The Court will address the Government's requests in order.

### A. Google's Terms of Service and Privacy Policy

First, the Government requests that Google provide the specific Terms of Service ("TOS") and Privacy Policy that were in place at the relevant time. The Government asserts that such documents are relevant to Defendant's expectation of privacy in his Google Drive, which is in turn relevant to Defendant's standing. (Docket No. 38 at 5-7). In its Motion to Quash, Google first argues that its TOS and Privacy Policy are already in the record, so testimony in this regard from a Google records custodian would be cumulative, and testimony as to the documents' content would also be irrelevant since the documents speak for themselves. (Docket No. 45 at 6-7). Upon

---

[7]     The Government has attached to its brief, as samples, two declarations that were submitted by Google in other cases. (Docket Nos. 55-1, 55-2).

[8]     While the Government and Google indicated to the Court that they have engaged in discussions in an attempt to resolve their dispute over the Subpoena – and the Court is mindful that such discussions appear to have narrowed their dispute – the Court observes that the Government's original Subpoena was woefully overbroad and vague, as it requested that Google provide, in lieu of personal appearance, the following: "Google's Terms of Service and Privacy Policy [specifying no dates or details]; Information relating to the following Cyber Tipline Reports: 194830718; 194838522; 194894935; 194943317; 195272249; 195642928; and 195930093 involving zstarr90@gmail.com [providing no further details as to the information sought regarding such reports, which are themselves thousands of pages long]." (Docket No. 45-2). The Government argues that Google should provide a declaration in this case because it has provided declarations in other cases, but the Government has not supplied the subpoenas from the other cases used to elicit the sampling of supplied declarations or otherwise described the antecedent requests leading to those declarations, and therefore the degree of specificity of the information sought via declaration in those other cases is not known.

discussion regarding the documents, however, Google acknowledges that its TOS and Privacy Policy have changed over time, so the documents currently in the record may or may not be the relevant versions. (Conf. of Counsel). Nevertheless, Google asserts that the various iterations of its TOS and Privacy Policy are publicly available online, so the Government is able to obtain the correct documents simply by going onto designated websites and downloading the TOS and Privacy Policy that were in place at the relevant time. (*Id.*; Docket No. 60 at 2).

In response, the Government argues that testimony (by way of declaration) regarding Google's TOS and Privacy Policy would serve to help parse through and explain otherwise dense documents, and would confirm the particular TOS and Privacy Policy that were in place at the relevant time. (Docket No. 55 at 3). The Government also states that in its Subpoena it asks Google to confirm that the TOS and Privacy Policy provided as exhibits to the suppression motion were the TOS and Privacy Policy in place at the relevant time, which is neither unreasonable nor oppressive. (*Id.*).

Upon review of the TOS and Privacy Policy attached to the filings as exhibits by both the Government and Google, the Court notes that such documents are neither particularly dense nor are they extremely lengthy so, in the Court's view, the Government should be able to review and understand them with relative ease. However, to the extent the Government seeks to confirm the versions of the TOS and Privacy Policy that were in place at the relevant time here, the Court finds that it would be neither unreasonable nor oppressive for Google either to supply the TOS and Privacy Policy in place at the relevant time, or to identify with specificity in a declaration where in the public domain Google's various versions of its TOS and Privacy Policy can be found so that the Government is able to obtain on its own the versions that were in place at the relevant time.

**B.  Google's business interest in ensuring that its platform is free of CSAM**

The Government also seeks a declaration from Google describing its business interest in ensuring that its platform is free of CSAM, which the Government indicates is relevant to determining whether Google is a state actor for Fourth Amendment purposes.  (Docket No. 55 at 3).  The Government notes that when Google has provided such declarations in other cases, it has also highlighted its private, non-governmental interest in taking voluntary steps to report and remove CSAM on its services.  (Docket No. 55 at 3).  In its Motion to Quash, Google argues that NCMEC's declaration (which is presently in the record) is sufficient to show that Google's CSAM detection efforts are voluntary, and that the NCMEC testimony corroborates Google's statements in the CyberTips themselves and in its TOS and Privacy Policy regarding the issue of voluntariness, so additional testimony in this regard would be cumulative and unnecessary. (Docket No. 45 at 7-8).

The Court notes that – regardless of whether Google has produced a description of its relevant business interest in other instances, or whether Google's relevant business interest can be discerned from a declaration made by NCMEC or from other documents cited – Google indicated in its reply brief that its business interest in eradicating CSAM from its platform and the voluntary efforts it undertakes to do so can also be confirmed in the Google declarations provided in other cases, and that those declarations restate Google's public statements (which can be found, for instance, at its Transparency Report Help Center, available at a referenced website).  (Docket No. 60 at 2).  Based on Google's representations to the Court in this regard – and also mindful of Google's interest in not being found to have violated Defendant's constitutional rights – the Court finds that it would be neither unreasonable nor oppressive for Google either to provide a description of its relevant business interest in ensuring that its platform is free of CSAM, or to

9

identify with specificity in a declaration the appropriate links where such business interest is described.

### C. **Human review of Defendant's files by Google**

Last, the Government requests a declaration from Google clarifying its process for human review of CSAM files and, relatedly, Google's human review of the four files viewed by SA Stoner and TFO Dish and relied upon by SA Stoner in securing the search warrants in this case. The Government argues that such declaration will provide the critical clarification that a human reviewer from Google viewed the four files that were later viewed and relied upon by SA Stoner in obtaining search warrants, which information is relevant to showing the lawfulness of such review under the private search doctrine. (Docket Nos. 38 at 2, 10; 55 at 2-3). In moving to quash the Subpoena, Google argues that providing such testimony is unreasonable and oppressive because there is no *bona fide* factual dispute regarding this issue (Docket No. 45 at 9), and because the CyberTipline reports clearly indicate when a human reviewer at Google viewed the files (Conf. of Counsel).

In response, the Government explains that clarifying that a human reviewer at Google viewed the files that SA Stoner later viewed (which are the files that he then relied upon in obtaining search warrants) is relevant to establishing that SA Stoner's viewing of the files was protected by the private search doctrine, the applicability of which Defendant disputes in his Motion to Suppress. (Docket Nos. 38 at 2, 4, 9-10; 55 at 2-3). The Government also disagrees with the assertion made by Google's counsel that the CyberTips themselves, which are discussed in the NCMEC affidavit, provide sufficient clarification that a human reviewer at Google viewed the CSAM files at issue here. (Docket No. 55 at 3).

First, the Court agrees with the Government that determining whether a human reviewer at Google viewed the files that were later viewed by SA Stoner is relevant to establishing that the later review is protected by the private search doctrine. Further, the Court notes that Defense counsel appears to question whether the files at issue were subjected to human review at Google, so it is not clear that there is no dispute in this regard, and it is reasonable for the Government to seek to clearly establish this fact on the record. (Conf. of Counsel). The Court also agrees that the fact that Google undertakes human review of CSAM files cannot be established in this case using the sources cited by Google. Thus, although, during the Telephone Conference of Counsel, Google's counsel referred to Section A of the CyberTipline report as providing clarification that a human reviewer viewed the CSAM files, the Court notes that such reference simply uses the term "Google reviewer." (Docket No. 56 (filed under seal)). The Court further observes that the declarations provided by Google in other cases have clarified in those cases that a Google reviewer is a human reviewer.

For example, the Government has attached to its response two declarations that Google submitted in other cases, one of which states, "When Google includes a statement or indication in a CyberTip that an image was viewed or reviewed by Google, it is referring to a viewing of that image by a human reviewer concurrent to or immediately preceding making the report." (55-2 at 2, ¶ 12). Another Google declaration, submitted in a different case, refers to a "Google employee or contractor" as a "Google Reviewer," and specifies that "when Google indicates in a CyberTipline report that a file was viewed by Google, it is referring to a viewing of that file by a human immediately preceding making the report." (Docket No. 55-1 at 1-2). Such declarations by Google clarified in those cases that a CyberTip indicating a "Yes" response to the question, "Did reporting ESP view entire contents of uploaded file?" means that a human reviewer at Google

viewed the file. The Government similarly seeks to establish on the record in this case that the Google reviewer who viewed the files at issue here was a human reviewer at Google.

Therefore, the Court finds that, as Google has done in other cases, it would be neither unreasonable nor oppressive for Google to provide, in this case as well, a declaration explaining what a "Google reviewer" is in the context of CyberTips and CyberTipline reports, and clarifying whether a "Google reviewer" is a human reviewer. However, if such clarification is made, Google need not also provide a specific declaration as to whether the four files initially viewed by SA Stoner were first viewed by a human reviewer at Google, as such information should be discernible from the other evidence of record.

## III.    CONCLUSION

For the reasons set forth, Google's Motion to Quash will be granted in part and denied in part. As the Government has revised its request to that of a written declaration, the Court finds that, with the foregoing modifications to the Subpoena, the declaration sought from Google is neither unreasonable nor oppressive. Such request does not seek information that is cumulative of information already in the record, nor does it seek information that is irrelevant or immaterial to this case. Rather, with such modifications in place, the Court finds that the Government has met its burden of showing that the requested declaration clears the hurdles of relevancy, admissibility, and specificity. *See Nixon*, 418 U.S. at 699-700.

An appropriate Order follows.

## ORDER OF COURT

AND NOW, this 15th day of July, 2026, upon consideration of Google's Motion to Quash, (Docket No. 44), for the foregoing reasons, IT IS HEREBY ORDERED that said Motion is GRANTED IN PART AND DENIED IN PART.

The Motion is GRANTED to the extent that Google will not be required to supply live witness testimony at the suppression hearing scheduled in this matter, and it is further GRANTED insofar as the Subpoena is hereby MODIFIED such that, in lieu of personal appearance, Google shall provide, **by July 24, 2026,** the following materials and/or a written declaration addressing the following:

1. Google shall either supply the Terms of Service and Privacy Policy that were in place at the relevant time(s), with such time(s) to be identified by the Government forthwith, or Google shall identify with specificity where in the public domain the relevant iterations of its Terms of Service and Privacy Policy can be found.

2. Google shall either provide a description of its business interest in keeping its platform free of CSAM, or Google shall identify with specificity where in the public domain a description of such business interest can be found.

3. Google shall clarify the meaning of the term "Google reviewer" as used in the context of the CyberTipline reports specified in the Subpoena, and Google shall clarify and state affirmatively whether the Google reviewer who viewed the files that are referenced in such CyberTipline reports was a human reviewer at Google.

4. Nothing in this Order shall prohibit the Government and Google from stipulating to a narrowing of the above-referenced modifications to the Subpoena.

The Motion is DENIED in all other respects.

_s/ W. Scott Hardy_
W. Scott Hardy
United States District Judge

cc/ecf:  All counsel of record

13